<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PATRICIA RODRIGUEZ,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 06-4525 (DRD)

**O P I N I O N**

*Appearances:*

LANGTON & ALTER, ESQS.
By: Abraham S. Alter, Esq.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065

    *Attorney for Plaintiff*

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY for the District of New Jersey
By: Jennifer S. Rosa, Esq.
Special Assistant U.S. Attorney
C/O Social Security Administration
26 Federal Plaza, Room 3904
New York, NY  10278

    *Attorney for Defendant*

**DEBEVOISE, Senior District Judge**

Plaintiff, Patricia Rodriguez, pursuant to section 42 U.S.C. §§ 405(g) and 1383(c)(3) seeks this Court's review of the Commissioner of Social Security's (hereinafter "SSA") final decision that Plaintiff is not entitled to Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI") under Title II and/or Title XVI of the Social Security Act (hereinafter "Act").  This is the second district court appeal in this matter.  Plaintiff seeks reversal of the SSA's decision on the grounds that the Administrative Law Judge (hereinafter "ALJ") committed legal errors in reaching this decision and that the ALJ's conclusions are not supported by substantial evidence.  On the first remand, the district court ordered that the ALJ rely on a medical advisor in determining the onset date.  On this second remand, the Court finds that the ALJ failed to provide a sufficient medical advisor for Plaintiff's mental impairment.  For the reasons set forth below, the SSA's decision will be reversed and remanded.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB under Title II of the Act and SSI under Title XVI of the Act on October 3, 2001.  (R. at 82-84.)  On April 3, 2003, after her application for benefits and subsequent reconsideration request were denied (R. at 62-66, 70-72), Plaintiff appeared before the Honorable Richard L. Desteno ("ALJ") (R. at 28).  On May 23, 2003, the ALJ issued a decision that Plaintiff was not entitled to DIB or SSI.  (R. at 15-27.)  The Appeals Council found no grounds to review the ALJ's decision (R. at 6-8), and therefore the Plaintiff timely appealed to this Court.

In the first appeal to this Court, Plaintiff alleged that the ALJ failed to consult a medical

2

advisor when determining the onset date of her impairments for the DIB claim. (R. at 387.) As to her SSI claim, Plaintiff argued that the ALJ failed to explain his evidentiary basis and present substantial evidence in determining that (1) Plaintiff's impairments did not meet the Listing of Impairments provided in 20 C.F.R. § 404, Subpart P, Appendix 1; (2) Plaintiff had the capacity to perform sedentary work; and (3) Plaintiff was able to perform her past work as a data entry clerk. (R. at 387.) The ALJ conceded to the remand regarding the SSI claim, but objected to the remand of the DIB claim. Id. On July 11, 2005, the Court reversed and remanded the ALJ's decision with regard to both the DIB and SSI claims, concluding that the ALJ erred in his DIB analysis at step two by not complying with the Social Security Regulation (hereinafter "SSR") 83-20 in determining the onset date of Plaintiff's disability. (R. at 395.) According to SSR 83-20, the ALJ is required to obtain a medical advisor when determining the onset date, if such date is unclear. See Walton v. Halter, 243 F.3d 703 (3d Cir. 2001) (citing Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997)).

    The Appeals Council issued a remand order on July 19, 2005 (R. at 399-403), and a second hearing before ALJ Richard L. Desteno took place on November 29, 2005 (R. at 303). On February 3, 2006, the ALJ again issued a decision denying Plaintiff disability. (R. at 303-12.) When the Appeals Council found no ground to review (R. at 293-95), the Plaintiff filed his district court action for the second time.

## I. BACKGROUND

    Plaintiff is a 37 year old single mother of two who asserts that she is disabled because of a combination of impairments. (R. at 39.) Such impairments include physical ailments of liver disease, autoimmune hepatitis, lupus, asthma, diabetes, and arthritis, and psychiatric problems of

depression and anxiety. (R. at 39, 388.) Plaintiff's date last insured ("DLI") was December 31, 1997. (R. at 303.)

In rendering his determination, the ALJ heard the testimony of Plaintiff, Plaintiff's cousin, Marian Rodriguez, and medical expert Dr. Martin Fechner. The ALJ also considered medical evidence submitted by Plaintiff and independent sources.

Plaintiff testified that she first became ill in December 1996 with flu-like symptoms which resulted in a diagnosis of hepatitis and liver problems in February 1997. (R. at 39.) During this time, she stated that she was sick and in bed all of the time (R. at 43), and her weight dropped from 170 to 125 pounds (R. at 41). In 1997, she was diagnosed with lupus. (R. at 334.) Plaintiff claimed she was depressed throughout the entire time because of her physical ailments and because she did not understand what was happening to her. (R. at 305.) She asserted that she is unable to take psychiatric medication because of the adverse affects it would have on her liver. Id.

In the second hearing, Plaintiff alleged that her conditions were getting worse: she has fatigue, nausea, headaches, dry mouth, painful joints, and swelling. (R. at 306.) She also alleged that she felt very depressed, scared, shaky, and nervous. Id. She sleeps most of the time throughout the day, and only gets up to make her children light meals or do light chores. Id. Her family assists with shopping and household chores. Id.

At the first hearing, Plaintiff's cousin, Miriam Rodriguez, also testified. Id. She attested that during 1997, she lived close to Plaintiff and visited Plaintiff several times a week. Id. Ms. Rodriguez stated that she had to assist Plaintiff by taking her to see numerous doctors and helping her with child care, grocery shopping, and household chores. (R. at 54-56, 388.) She

testified that Plaintiff was consistently sick, tired, had problems getting out of bed, and did not want to engage in any activities. (R. at 56, 388.)

At the second hearing, Dr. Martin Fechner testified as a medical expert. (R. at 306.) Dr. Fechner stated that the lupus was diagnosed in 1997, but there was no way to know how severe the lupus or liver disease was at that time. (R. at 334.) He testified that the onset date for Plaintiff's severe impairment caused by lupus and hepatitis began in the middle of 2000. (R. at 335.) Taking all medical records into account, Dr. Fechner determined that Plaintiff's residual functional capacity ("RFC") was lowered to a sedentary level at around September 2000. (R. at 338.) However, this RFC determination does not take any mental impairment into consideration. (R. at 339.)

Concerning Plaintiff's mental impairment, Dr. Fechner stated that Plaintiff was diagnosed with major depression. (R. at 340.) He noted that he had records dated as far back as February 2000 (R. at 336) and that there was evidence throughout the chart of a suicide attempt when Plaintiff was 18 years old, which, if true, would mean her mental condition was at least a chronic recurrent condition. Id. As an internist, Dr. Fechner stated that he did not have the expertise to determine if Plaintiff's mental impairments met or equaled the listing of impairments or a psychiatric RFC. (R. at 345.)

After considering the medical reports and the hearing testimonies, the ALJ issued a decision denying Plaintiff's request for Benefits. (R. at 303-12.) The ALJ denied Title II DIB benefits because there was no evidence determining a severe impairment on or prior to the DLI. (R. at 307.) The ALJ further rejected Plaintiff's Title XVI SSI claim because he determined that Plaintiff has the capacity to perform sedentary work. (R. at 311.) The ALJ's findings of fact and

conclusions of law were included in the decision and are discussed below.

## II. DISCUSSION

The issue before the Court is whether the SSA's decision to deny Plaintiff's application for Benefits is supported by substantial evidence. Plaintiff argues that there is substantial evidence establishing entitlement and eligibility for benefits. (Pl.'s Br. at 12.) Plaintiff asserts that the ALJ erred by ignoring substantial evidence and failing to determine that her impairments were severe, by failing to provide a medical expert who could properly assess Plaintiff's onset date for her mental impairments, and by determining that Plaintiff possesses the residual capacity to engage in sedentary level work. (Pl.'s Br. at 12-25.) A review of the prior district court opinion and second decision by the ALJ shows that the ALJ's conclusion that there is no substantial evidence supporting an onset date prior to the date last insured was erroneous as a matter of law. Therefore, the ALJ's conclusion as to Plaintiff's ability to perform sedentary work is not supported by substantial evidence and remand is necessary.

**A.  Standard of Review**

A district court's review of the SSA's factual conclusions is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A district court is bound by the SSA's factual findings that are supported by substantial evidence, even if the district court would have reached a different factual conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). A district court, however, exercises plenary review of all legal issues in a case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

**B.  Determination of Disability**

Under the Social Security Act, disability insurance benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work," § 423(d)(2)(A).

An ALJ determines whether an individual is disabled and therefore entitled to disability insurance benefits by using a five-step evaluation process.  See 20 C.F.R. § 404.1520(a).  A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry.  The five stages of inquiry proceed as follows.

*Step 1: Substantial Gainful Activity.*  The ALJ must first determine whether the claimant is engaging in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(*i*).  Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit.  20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*i*).

*Step 2: Severity of Impairment.*  If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(*ii*).  An impairment is severe when it significantly limits the individual's physical or mental ability to do basic work activities.  § 404.1520©.  If the ALJ finds that an individual's impairment is not severe or has not met the 12 month durational requirement, then

the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*ii*).

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(*iii*). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. § 404.1520(a)(4)(*iii*).

*Step 4: Residual Functional Capacity.* If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(*iv*). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ finds that the individual has the capacity to perform past work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*iv*).

*Step 5: Adjustment to Other Work.* If the claimant cannot perform past work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(*v*). Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). If the ALJ finds that the individual has the

8

capacity to adjust to other work, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(*v*). However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled. Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the SSA on the fifth step. At the fifth step, the SSA must prove that the individual is capable of obtaining gainful employment other than his past relevant work and that jobs, which the individual can perform, exist in substantial numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

**C.  The SSA's Findings and Conclusions**

In the instant case, the ALJ applied the five step analysis and concluded at the first step that Plaintiff was not engaged in any substantial gainful activity since the alleged onset date. (R. at 307.) For the DIB claim, the ALJ ended the analysis at step two (R. at 307-08) because he determined that the evidence failed to establish the existence of a severe impairment on or prior to the DLI of December 31, 1997 (R. at 307). Plaintiff challenges this conclusion, arguing that the ALJ did not consult a proper medical expert in determining the onset date for the mental impairment. (Pl.'s Br. at 15.) Regarding the SSI claim, the ALJ agreed that Plaintiff's impairments of autoimmune hepatitis, asthma, diabetes, obesity, and depression are severe. (R. at 308.) However, he concluded that none of these impairments met the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. Id.

At the fourth step, the ALJ considered Plaintiff's RFC and concluded that Plaintiff retained the ability to perform sedentary work. (R. at 310.) In reaching this conclusion, the ALJ relied upon Dr. Fechner's testimony. Id. Plaintiff contends that the ALJ erred in reaching the

conclusion that Plaintiff was able to perform sedentary work because the ALJ discredited the opinion of Plaintiff's treating physician, Plaintiff's own testimony, and the testimony of Plaintiff's cousin. Further, Plaintiff asserts that the ALJ accepted "expert" advice about her mental impairment from an internist, who stated that he himself did not have the expertise to determine a psychiatric RFC. (R. at 345.) Determining that Plaintiff was capable of returning to her past relevant work as a data entry clerk, the ALJ did not consider the fifth step. (R. at 311.)

The Court concludes that the ALJ failed to provide a medical advisor for Plaintiff's mental impairment pursuant to SSR 83-20 in order to determine an onset date for the DIB claim. Additionally, the ALJ's further finding that Plaintiff has the ability to perform past relevant work was reached in error because he relied on the testimony of a medical advisor who clearly was not capable of determining an RFC that combined all of Plaintiff's impairments. Therefore, the case must be remanded for further proceedings.

*(1) The ALJ's Conclusions at Step Two Regarding The Onset Date of a Severe Impairment*

At step two, the ALJ concluded that "[t]he evidence fails to establish the existence of a medically determinable severe impairment on or prior to the date last insured of December 31, 1997." (R. at 307.) To receive DIB under Title II, the Plaintiff must show that the onset date for her disability occurred while she was insured. See Kane v. Heckler, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985) (citing De Nafo v. Finch, 436 F.2d 737, 739 (3d Cir. 1971); 20 C.F.R. § 404.320(b)(2) (1985)). SSR 83-20 provides the policy on how to determine an onset date with regards to Title II and Title XVI of the Act. Factors that should be considered and evaluated together "include the individual's allegation, the work history, and the medical evidence." SSR 83-20.

When contemporaneous personal medical observation is unavailable, the onset will be determined by looking at "the best available data without regard to its source." Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). According to SSR 83-20, this data includes information received after the fact from the Plaintiff and other lay people, such as family and neighbors. Id. See also Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003) (explaining that "[r]etrospective diagnosis . . . corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."). When the onset date is unclear because of a slowly progressing impairment, a retroactive inference cannot be made without consultation with a medical advisor in order to ensure the onset determination is based on a legitimate medical basis. Newell, 347 F.3d at 549 n.7. See also Walton, 243 F.3d at 709; Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997).

The Court previously remanded this case for failure to consult a medical advisor. (R. at 393.) In response, the ALJ called on the expertise of Dr. Fechner, an internist. (R. at 307.) At the hearing, Dr. Fechner was capable of determining an onset date for Plaintiff's physical ailments such as lupus and liver problems (R. at 335); however, he admitted that he did not have the expertise required to make a determination concerning Plaintiff's mental impairment (R. at 345). Despite Dr. Fechner's admission, the ALJ considered the doctor's testimony as adequate medical advice for both the physical and mental impairments. (R. at 307-08.) The ALJ reasoned that Dr. Fechner was an adequate medical advisor on the mental impairments because internists receive some training on mental disorders, and they can treat patients with such disorders at the initial stages. (R. at 308.) However, Dr. Fechner's comments on Plaintiff's mental impairment appeared to be no more than speculation when looking at her records:

11

> Well, she's attending Trinitas pyschology department in 2005. That was given to me today. Diagnosis of major depression. She's been on Zoloft. There's evidence on the chart from February of 2000, that she was anxious and depressed. So I would think that she had probably a major depression at that point. That's the earliest I can see. There is evidence throughout the chart as far as history, you know, when someone comes in and gives a history. Evidently she had some kind of suicide attempt when she was 18 years of age, and if that's true, then this is a chronic condition. Let's say chronic, at least a chronic recurrent condition.

(R. at 336.) When asked to give Plaintiff an RFC assessment, Dr. Fechner answered that she was capable of sedentary work, but this assessment was "not taking the psychiatric into consideration." (R. at 339.) When asked about his observations of the mental impairment, the doctor replied, ". . . Diagnosis is major depression. She's on Zoloft, and that's all I really know. I just - - those notes were just given to us today." (R. at 340.)

Furthermore, Dr. Fechner agreed that he had no formal training in psychiatric diagnosis and treatment beyond medical school in the early 1960's (R. at 340), aside from seeing occasional patients who complain of depression (R. at 341), reading medical magazines, letters, and speaking with drug detail people (R. at 343-44). He was only vaguely familiar with the GAF at Axis V and diagnostic impressions of psychiatry, and he stated that he would not treat someone with a GAF of 45. (R. at 344.) Dr. Fechner then said he did not feel that he would "be in the expert realm [to determine] whether someone meets or equals a listing [of impairments] or a psychiatric RFC." (R. at 345.)

Although SSR 83-20 does not specify that the medical advisor should be considered an expert in the field they are asked to advise about, the regulation's reason for getting a medical advisor is to get an informed judgement about the matter. See SSA 83-20. Relying on a medical advisor who is well-versed in the subject matter is the logical step in the SSR 83-20 analysis. On

its face, having an internist act as a medical advisor is not insufficient. However, when the internist states in his testimony that he is not equipped or trained to comment on a certain impairment to the extent required to make a determination, he no longer becomes an adequate medical advisor according to SSR 83-20. Therefore, this case must, once again, be remanded so that the ALJ can consult a proper medical advisor. In addition to consulting a medical advisor, the ALJ should also take into consideration all other medical records and the testimony of lay persons such as Plaintiff and Plaintiff's cousin. As mentioned before, when an onset date is ambiguous, such lay testimony should be given weight. See Walton, 243 F.3d at 710; Newell, 347 F.3d at 547.

### (2) The ALJ's Conclusions at Step Four

The ALJ determined that Plaintiff was capable of an RFC of sedentary. (R. at 309.) In determining the RFC, the ALJ dismissed Plaintiff's subjective complaints because there was a "lack of significant evidence to support the full extent of such claims." Id. He concluded that "the overall record does not support [Plaintiff's complaints] to the debilitating extent asserted." Id. He supported this conclusion by looking at the "expert medical testimony at the post-remand hearing of Martin Fechner, M.D." Id. However, "lay evidence need not be corroborated by contemporaneous medical evidence to be credible." Newell, 347 F.3d at 547. See Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984) (lay evidence must be considered even if uncorroborated by medical evidence).

When the ALJ relied on Dr. Fechner's testimony that the "RFC for SSI purposes was sedentary" (R. at 310), he failed to mention or contemplate the fact that Dr. Fechner's full statement actually said that the Plaintiff would have a sedentary RFC "not taking the psychiatric

13

into consideration." (R. at 339.)   The ALJ erred when he did not take Plaintiff's complete list of impairments into consideration when determining the RFC.  While there may be evidence in the record to support the ALJ's finding, it is inadequate to support the ALJ's step four conclusion, because Plaintiff's psychiatric condition was completely disregarded.

### III. CONCLUSION

For the reasons set forth above, the determination of the SSA regarding both the DIB and SSI claims will be reversed and the case remanded for reconsideration in accordance with this opinion.  It is further ordered that on remand the case be assigned to a different Administrative Law Judge.  An order implementing this opinion will be entered.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

May 28, 2008